May Bell SCHMID, Plaintiff,

v.

ROEHM GmbH, a foreign corporation, RG Industries, a corporation, and Liberty Organization, Inc., a corporation, Defendants.

Civ. A. No. 80–2159.

United States District Court,
D. Kansas.

May 12, 1982.
On Motion for Reconsideration
July 21, 1982.

Lynn R. Johnson, Mark Johnson, and Mark Beam-Ward, Schnider, Shamberg & May, Shawnee Mission, Kan., for plaintiff.

James Borthwick and Martin M. Loring, Kansas City, Mo., John Bukaty, Kansas City, Kan., for defendant Roehm GmbH.

Roger D. Stanton, Peggy Grant-Cobb, and John D. Peterson Weeks, Thomas, Lysaught & Mustain, Kansas City, Kan., for defendant RG Industries.

John M. Kilroy and Timothy P. Egbert, Kansas City, Mo., Robert C. Miller, Kansas City, Kan., for defendant Liberty Organization, Inc.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

Now pending before the court are plaintiff's motion to strike defenses of Liberty Organization, Inc. (hereafter Liberty), the motion of RG Industries, Inc. (hereafter RG), for summary judgment, the motion of Roehm GmbH (hereafter Roehm) to dismiss, and plaintiff's cross-motion for summary judgment. Defendant RG's previous motion to dismiss has been consumed by the motion for summary judgment and is therefore considered withdrawn.

Plaintiff's motion to strike defenses raised in the answer of Liberty goes to the defenses of improper service, statute of limitations, and the lack of "privity." Defendant Liberty correctly observes that under Federal Rule of Civil Procedure 12(f), a motion to strike must be made within twenty days after service of the pleading. Plaintiff's motion to strike was filed some thirty-eight days after Liberty filed its answer, and therefore plaintiff's motion is out of time. We also note that the defense of insufficient service of process has already been ruled on by the court. The remaining defenses would have withstood a timely motion to strike by plaintiff due to the lack of discovery on the issues. Although the defense of improper service was denied in our order of October 12, 1981, the defendant Liberty preserved this defense in its answer filed after our order, and plaintiff has not shown any prejudice by reason of its inclusion in the answer. Plaintiff's motion is therefore without merit, as well as untimely, and will be denied.

We now turn to the substantive motions before us—the motions for summary judgment of RG and Roehm and the cross-motion for summary judgment by the plaintiff. We are ever mindful of the familiar standards governing motions for summary judgment. The moving party must demonstrate entitlement to summary judgment beyond a reasonable doubt and all the facts must be viewed in the light most favorable to the party opposing the motion. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir. 1978); *Mogle v. Sevier County School District*, 540 F.2d 478, 482 (10th Cir. 1976), *cert. denied* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977). Summary judgment is to be rendered only "if the pleadings, depositions, answers to interrog-

atories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). With these standards in mind, we turn first to the motion of defendant RG for summary judgment.

Plaintiff's complaint is based upon an incident which occurred August 16, 1978, involving a .38 caliber double-barreled derringer, serial number 40439. Plaintiff claims that her injuries resulted from an accident caused by a defect in the gun, namely the lack of sufficient safety devices. The gun in question was manufactured by defendant Roehm and imported into the United States by defendant Liberty on June 29, 1966. On July 13, 1966, defendant Liberty sold and shipped the gun to R. H. Pettit, a gun dealer in Kentucky. Defendant RG Industries, Inc., was incorporated in the State of Florida on October 1, 1968. As defendant RG was not in the chain of distribution and was, in fact, not in existence at the time the gun was manufactured and imported into the United States, defendant RG argues that there can be no liability on its part in this suit. Plaintiff asserts that defendant RG is the "alter ego" of defendant Roehm, the manufacturer of the gun. Plaintiff admits that absent a finding of alter ego, RG is not properly a party defendant.

In Kansas, "we start with the basic premise that a corporation and its stockholders are presumed separate and distinct, whether the corporation has many stockholders or only one. Debts of a corporation are not the individual indebtedness of its stockholders. However, in an appropriate case the corporate form will be disregarded and the corporation and its stockholders may be treated as identical. . . . Power to pierce the corporate veil is to be exercised reluctantly and cautiously. . . ." *Amoco Chemicals Corp. v. Bach*, 222 Kan. 589, 593, 567 P.2d 1337 (1977). The Kansas court has further held that:

... [T]he doctrine of *alter ego* fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business, such liability arising from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. Under it the court merely disregards corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation . . . .

*Kilpatrick Bros., Inc. v. Poynter*, 205 Kan. 787, 797, 473 P.2d 33 (1970).

Kansas has adopted the Restatement, Second, Conflict of Laws, § 52 (Comment b), pp. 180–81:

Judicial jurisdiction over the parent corporation will give the state judicial jurisdiction over the subsidiary corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence.

*Farha v. Signal Companies, Inc.*, 216 Kan. 471, 481, 532 P.2d 1330 (1975).

The fact of single ownership of a corporation will not in and of itself support the alter ego theory and justify a disregard of the corporate entity. *Amoco Chemicals Corp. v. Bach, supra*, at 594.

An examination of the cases discloses that some of the factors considered significant in justifying a disregard of the corporate entity are: (1) under capitalization of the one-man corporation, (2) failure to observe corporate formality, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) use of the corporate entity in promoting injustice or fraud.

*Id.*, at 594.

The federal courts sitting in diversity cases have also applied the Kansas law pertaining to alter ego liability. In *Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974), the court acknowledged the Kansas alter ego law:

Under this doctrine, the corporate entity is disregarded and liability fastened on an individual who uses the corporation merely as an instrumentality to conduct his own personal business.... Thus, a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity.... Circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized. (Emphasis added.)

The fact that two corporations may have stockholders or officers in common or that one is the parent of the other, or that the parent selects from its own directors and officers the majority of the directors of the other, or that a parent finances a subsidiary, is, without more, insufficient to warrant treating the two corporations as one. "But where from all the facts and circumstances it is apparent that the relationship between the parent and its subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two so mingled, the recognition of distinct entity would result in injustice to third persons, courts will look through the legal fiction of separate entity and treat them as justice requires." *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, et al. v. Cardwell Manufacturing Company, Inc.*, 416 F.Supp. 1267, 1286 (D.Kan.1976). In *Cardwell*, Judge Rogers relied on the ten criteria established by the Tenth Circuit in *Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940):

The determination as to whether a subsidiary is an instrumentality is primarily a question of fact and degree. The following determinative circumstances are recognized:

(1) The parent corporation owns all or majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

Judge Rogers noted that the factors enumerated in *Fish v. East* were merely guidelines that should be considered in making a determination as to whether a corporate entity would be disregarded. *Cardwell, supra*, at 1286.

The Third Circuit has stated that the equitable tool of piercing the corporate veil on the basis of the alter ego theory is appropriately utilized "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069 (3rd Cir. 1979); *quoting Zubik v. Zubik*, 384 F.2d 267, 272 (3rd Cir. 1967), *cert. denied* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). In *Trustees of The Colorado Cement Masons Apprentice Trust Fund, et al. v. Burton Levy, et al.*, Nos. 78–1057 and 78–1058, *unpublished* (10th Cir., Aug. 17, 1979) the Tenth Circuit held that "in order to establish as a matter of law that the corporate veil should be pierced and that an individual should be held liable for actions that were carried out in the name of the corporation, *it must appear that the corporation was being misused in some manner.* For example, that

its funds were being diverted or a fraud, constructive or express, was being carried out." Slip op. at 7 (emphasis added).

Plaintiff cites several facts to support her claim that RG Industries is the alter ego of defendant Roehm. The two corporations have common shareholders, Heinrich Roehm, Gunter Roehm, and Heinrich Peter Roehm, although Roehm GmbH has other shareholders. The three Roehms are also directors of both corporations but there are directors not shared by the two corporations. Plaintiff also points to the lack of corporate minutes for the years 1973 to 1981. The initial capitalization of RG by the shareholders was $6,000.00, which plaintiff alleges was insufficient. However, plaintiff notes there was a $100,000.00 loan from Roehm GmbH in 1969 to defendant RG. Plaintiff also points out the close business contact between the two corporations and the close financial ties between them. RG imports part sets for handguns primarily from defendant Roehm GmbH and buys some parts domestically to complete the manufacture of the handguns. The plaintiff concludes that the financial dealings between the two corporations were at less than arm's length, primarily on the basis of two instances where accounts receivable from RG to Roehm were left unpaid for unreasonable lengths of time. In addition, plaintiff asserts that the driving force behind the formation of RG Industries by the Roehms was the Gun Control Act of 1968, which forbade the importation of certain completed handguns that Roehm GmbH had been importing complete up to that time. Finally, plaintiff notes that the Roehm brothers, as shareholders and majority directors, have final authority over policy decisions and decisions of both corporations requiring output of capital.

RG, of course, views these uncontroverted facts differently. We note that the individual shareholders of RG have not been named defendants in this suit, and no real attempt has been made by plaintiff to show that the Roehms have conducted business through Roehm GmbH in such a way that would justify piercing that corporate veil. Even assuming, then, that plaintiff has es-

tablished that the individual Roehms conducted business through RG Industries as merely their alter ego, this does not prove the point in issue, whether RG Industries is the alter ego of Roehm GmbH. The shareholders and directors of the two corporations are not identical. Roehm GmbH itself owns no RG stock. The individual Roehms did not loan money to RG Industries, Roehm GmbH did. The individuals, not Roehm GmbH, incorporated RG. The inadequate capitalization contention is irrelevant here. This is no case of a parent operating an insolvent shell corporation to insulate itself from liability. The reasons for incorporation are also of no import in this case. Roehm GmbH does not pay RG's expenses or losses. Although Roehm GmbH is the largest single supplier of parts to RG, RG does not conduct business with Roehm exclusively. Most importantly, the uncontroverted testimony of William Kirk, a director, executive vice-president and general manager of RG, is that he alone makes the day-to-day business decisions for the corporation. He makes all final decisions for RG on amount and sources of supplies, hiring, firing, promotion, salaries, production, and prices. His performance is under the general supervision of the shareholders and board of directors as is any corporate officer. Mr. Kirk's testimony demonstrates that he acts independently in the interest of RG, and not as a mouthpiece for Roehm GmbH or the individual Roehms. Although corporate minutes have not always been kept, it appears obvious that the corporate distinctions were in fact observed.

The court has read the depositions on file, as well as the voluminous documentary exhibits filed with respect to all the pending motions. We find that of the ten factors enumerated in *Fish v. East, supra*, plaintiff has arguably established only a few: (2) Both corporations have common directors and officers; (3) the parent, Roehm, finances the subsidiary, RG; and (9) on some occasions the formal legal requirements of the subsidiary, RG, such as keeping corporate minutes are not observed.

■ We need not base our holding on this determination, however, as plaintiff has failed to show one essential element under the alter ego theory, that is, that the liability of RG arose from fraud or injustice perpetrated on third parties dealing with the corporation. *Quarles, supra,* at 1362.

In *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1379 (10th Cir. 1980), the Tenth Circuit was faced with a similar fact situation. Plaintiff Luckett brought an action for injuries sustained aboard a drilling rig in Singapore. Plaintiff sued Bethlehem Steel and its subsidiary, Bethlehem Singapore, for negligence in operation and maintenance of the crane involved in the accident, and argued that Bethlehem Singapore was a mere instrumentality or alter ego of Bethlehem Steel. The court of appeals upheld the trial court's ruling that Bethlehem Steel was not liable for actions of Bethlehem Singapore on the theory of alter ego. The court in reviewing the record found that the majority of the factors discussed in *Fish v. East, supra,* were lacking and that it was necessary to establish something more than ownership of all the subsidiary stock by the parent or identical directors in order to treat the two corporations as one.

A court will disregard the corporate entity where fraud or illegal or inequitable conduct is the result of the use of the corporate structures.... And while this is a fact question which should ordinarily be submitted to the jury, it need not be submitted if the evidence discloses no real question of fact.... *There is no showing of fraud or inequitable conduct resulting from the use of the corporate structures in this case. We do not feel that the possible difficulty of enforcing a judgment against Bethlehem Singapore alone or the possible inconvenience to plaintiff* (and resulting convenience to Bethlehem Singapore) *in suing Bethlehem Singapore in another forum is the type of injustice which warrants piercing the corporate veil.* Hence we hold that Bethlehem Steel is not liable on the theory that Bethlehem Singapore was its mere instrumentality or alter ego. *Luckett, supra,* at 1379 (emphasis added).

Similarly, there is no showing in this case that the use of a separate corporate structure by RG Industries resulted in any fraud or inequitable conduct towards plaintiff or anyone else. The problems plaintiff is encountering in its service of process on Roehm and the resultant statute of limitations dilemma do not justify holding RG Industries liable under the alter ego theory. Therefore, we find that plaintiff may not rely on the alter ego theory to impose liability on RG.

We note that the *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483 (D.Kan.1978), case, which rejected the alter ego theory for asserting personal jurisdiction under the long-arm statute is inapposite to the case at hand. Similarly, *Professional Investors Life Ins. Co. v. Roussel,* 445 F.Supp. 687 (D.Kan.1978), insofar as it relies on jurisdictional questions to reach its conclusion, is also not persuasive.

■ We note also that plaintiff has not argued that RG should be held liable under any traditional exception to the general rule that corporations are only liable for their own obligations, and that corporate liabilities adhere to the corporate entity. Those exceptions are: (1) Where the purchaser expressly or impliedly agrees to assume a liability; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transactions are entered into fraudulently in order to escape liability. The rule and its exceptions have been applied in Kansas in product liability cases. *Comstock v. Great Lakes Distributing Co.,* 209 Kan. 306, 496 P.2d 1308 (1972). None of these exceptions would apply in the instant case, nor would the "product line theory" of successor corporations operate to impose liability on RG in this situation, as Roehm continued in business after the formation of RG. *See, Akin v. Correct Manufacturing Corp., et al.,* No. 77–4159, *unpublished* (10th Cir., Sept. 27, 1978). For all the foregoing reasons, we find that defendant RG's motion for summary judgment must be granted.

■ We now turn to defendant Roehm's motion to dismiss. This motion will be treated as a motion for summary judgment because matters outside the pleading have been presented to the court. Federal Rule of Civil Procedure 12(b). There is no question that the accident occurred on August 16, 1978, and the two-year statute of limitations is applicable. (K.S.A. 60–513(a)(4). K.S.A. 60–203 provides that a civil action is commenced with the filing of the petition if service of process is obtained within ninety days after such filing. If service is not effected within ninety days of filing, the action is "deemed commenced" at the time of the service of process. The complaint in this case was filed April 24, 1980. The plaintiff served Roehm GmbH with process by directing the Kansas Secretary of State to mail the summons and complaint to the corporate offices of Roehm in West Germany on December 23, 1980. The summons and complaint were received by Roehm on January 12, 1981. There is no question that this service was outside the ninety-day period provided for in K.S.A. 60–203 and that therefore, the action is not deemed commenced as to Roehm until the January 12, 1981 date, which is beyond the two-year statute of limitations. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749, 100 S.Ct. 1978, 1984, 64 L.Ed.2d 659 (1981).

The only issue remaining is whether the attempted service upon Roehm by mailing a copy of the summons and complaint to RG Industries in Florida on May 2, 1980, was effective. If it was sufficient service of process upon defendant Roehm, the service was effectuated within ninety days and the service and commencement of suit would be within the two-year statute of limitations governing this action.

Rule 4(d) of the Federal Rules of Civil Procedure provides that service shall be made upon a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the

defendant." There is no controversy that whoever received the registered letter at RG was not an officer or director of Roehm. The only question, therefore, is whether RG can be considered the agent of Roehm for service of process. It is undisputed that RG is not the "registered agent" of Roehm, nor has RG been authorized by Roehm to accept service of process for it in this country. Plaintiff again relies on the alter ego theory to support service of process on RG as constituting service upon Roehm. We have already ruled that RG is not the alter ego of Roehm in disposing of RG's motion for summary judgment. Plaintiff makes the argument that a different standard of review is appropriate when the alter ego theory is being used to support service of process. However, no federal or Kansas cases are cited which would support such a proposition.

The Kansas court has recognized that when a corporation exercises such control over a subsidiary that it no longer has an existence of its own, and operates only as a division of the parent, that both corporations should be treated as one and that service of process upon the subsidiary operates to extend jurisdiction over the parent. *Farha v. Signal Companies, Inc.*, 216 Kan. 471, 480, 532 P.2d 1330 (1975). *Farha* involved a jurisdictional issue, as did *Energy Reserves, supra*, upon which plaintiff relies here. *Energy Reserves* resolved the issue of the language "agent or instrumentality" in the Kansas long-arm statute. Judge Theis ruled that an "agent or instrumentality" need not meet the alter ego test in order to bring the entity under the long-arm statute. *Energy Reserves* discussed at length the Cannon Rule [*Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925)], which held that a foreign parent corporation was not subject to jurisdiction in a state where service of process had been obtained upon its domestic subsidiary. *Cannon* stands for the proposition that the use of a subsidiary does not necessarily subject the parent corporation to jurisdiction. Where the corporate separation is

real, even if only formal, and no attempt is being made to hold the parent liable for an act of its subsidiary or to enforce against the subsidiary a liability of the parent, the parent is not subject to jurisdiction under *Cannon.*

In *Energy Reserves,* the court held that the *Cannon* rule had been modified by *International Shoe* and its progeny, and was not determinative of the jurisdictional issue in Kansas where the long-arm statute would authorize jurisdiction over such a parent. Judge Theis noted that *Cannon* did retain life in two situations, one of which was where "a nonresident corporation was not personally served, but rather received service solely on its subsidiary in the forum, as in *Cannon.*" *Energy Reserves, supra,* at 503. Judge Theis concluded that in that instance alter ego analysis was necessary to resolve the issue of the sufficiency of the manner of service. "Alter ego principles essentially would permit treatment of two corporations as one." *Id.* While in the instant case the served corporation, RG, was not a subsidiary and not in the forum itself, we agree that alter ego principles determine the issue of whether the two corporations can be treated as one for service of process.

Plaintiff also relies upon *Fooshee v. Interstate Vending Co.,* 234 F.Supp. 44, 52 (D.Kan.1964). *Fooshee* involved antitrust claims against the Chicago-based parent of several Wichita subsidiaries. Defendant challenged the court's jurisdiction, venue, and service of process. After denying both the jurisdictional and venue defenses, Judge Brown held that service upon the parent corporation's general manager of its subsidiaries was proper service. Judge Brown specifically ruled that "as a matter of law, F. R. Solomon, as Interstate's general manager of the Wichita subsidiaries, is 'an agent' through whom service on Interstate may be had" pursuant to Federal Rule of Civil Procedure 4(d). The court concluded that "a parent's general manager of local subsidiaries must by definition be of sufficient rank to insure that the parent will be notified of service." *Fooshee* at 52. Service must be made upon "an individual who

stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Id.* In this case, of course, there was no "local subsidiary" and no personal service on the parent's manager. There was nothing to imply authority on RG's part to receive service on behalf of Roehm GmbH. The *Fooshee* ruling is therefore not applicable to the instant facts.

The case of *Stoehr v. American Honda Motor Co., Inc.,* 429 F.Supp. 763 (D.Neb. 1977), is directly on point. In that case, the court held that although it was subject to personal jurisdiction in Nebraska, Honda Motor Co., Ltd., a Japanese corporation, was not properly served with process and the statute of limitations therefore barred plaintiff's action against that defendant. Plaintiff attempted to serve Honda, Ltd., by serving the registered agent of its wholly-owned subsidiary, American Honda, in the United States. Plaintiff argued that since American Honda was a wholly-owned subsidiary of Honda, Ltd., and was the exclusive importer and distributor of Honda products with common directors and officers, with consolidated financial reporting, that American Honda was in effect the agent of Honda, Ltd., in this country. The court held:

As a matter of due process a corporation which is subject to the jurisdiction of the Court on grounds other than and in addition to the presence of a subsidiary within the jurisdiction (as is the case here) is entitled to adequate notice of the pending lawsuit by service of process in accordance with controlling law. In the instant diversity action, jurisdiction was asserted and process served under Nebraska law as provided by Fed.R.Civ.P. 4(d)(7) and 4(e). Nebraska law permits service on an officer or managing agent of a corporation ... on the registered agent of the. corporation, or in his absence, on the Secretary of State ... or by service outside the state under the long-arm statute .... The manner of service utilized by plaintiff, service on the registered agent of Honda, Ltd.'s, subsidiary,

can only be sustained if that subsidiary can be construed as the managing agent of Honda, Ltd., in Nebraska.

*Id.* at 765–66.

The court held that neither a mere parent-subsidiary relationship nor a manufacturer-distributor arrangement would be sufficient to justify service in this manner. It was necessary to show the complete control by the parent over the subsidiary: the parent conducts the subsidiaries' business and controls its policies, the subsidiary is a mere adjunct and instrumentality of the parent, or the subsidiary corporation is merely a "dummy" by means of which the parent corporation does business in the state. If these are shown, service on the subsidiary may bind the parent. *Id.* at 766, *citing* Fletcher Cyclopedia of Corporations, Section 8773 at pp. 527–28.

The court found that the plaintiff had not demonstrated such an underlying unity between the two corporations that would warrant piercing the corporate veil in reaching the Japanese corporation through service of process upon American Honda. As plaintiff failed to carry its burden of proof, the service of process was held to be improper and was quashed. The court noted that ordinarily plaintiff could re-serve the defendant with process, but in this case the statute of limitations had run on plaintiff's claim and that therefore the complaint as to the defendant Honda, Ltd., must be dismissed.

We conclude that plaintiff in the instant action has similarly failed to carry her burden of proof as to the sufficiency of service of process on defendant Roehm. As RG Industries was not the "agent" of Roehm for service of process, the attempted service of May 2, 1980, was ineffective as to defendant Roehm and must be quashed. Plaintiff's claim is therefore barred by the applicable statute of limitations and this action must be dismissed in accordance with defendant Roehm's motion. This finding obviates the necessity of our discussing Roehm's jurisdictional complaints.

Plaintiff's motion for summary judgment, asking this court to hold RG to be the alter ego of Roehm GmbH, must, of course, be denied.

IT IS THEREFORE ORDERED that plaintiff's motion to strike defenses of Liberty Organization is hereby denied, the motion for summary judgment of defendant RG is granted, as is the motion to dismiss of defendant Roehm. Plaintiff's motion for summary judgment is denied.

## MEMORANDUM AND ORDER

### On Motion For Reconsideration

This case comes before the court on plaintiff's motion for reconsideration and rehearing, and to set aside its order granting Roehm GmbH's motion to dismiss (which we construed as a motion for summary judgment). In our prior order, the court granted the motion of Roehm GmbH to dismiss and the motion of RG Industries for summary judgment. Plaintiff now asks us to reconsider that portion of our opinion that held that service of process upon RG Industries was not sufficient service upon defendant Roehm GmbH.

Plaintiff first argues that fraud need not be shown to support a finding of alter ego between two corporations, and cites the case of *Milgo Electronic Corporation v. United Business Communications, Inc.*, 623 F.2d 645 (10th Cir. 1980). As plaintiff's quote from that case makes clear, however, some type of injustice must have resulted from the commingling of corporations in order to pierce the corporate veil or to hold one corporation to be the alter ego of the other. As we found in our previous order that neither fraud *nor* injustice resulted from the operation of two corporations involved in this case, plaintiff's contention is without merit.

Plaintiff argues that injustice would result from failure to recognize RG as the alter ego of Roehm for purposes of service of process because RG was formed to allow importation of guns by Roehm in compliance with the Gun Control Act. We find this allegation irrelevant. Under the alter ego theory the "injustice" required must result from the activities of the two

corporations holding themselves out to third parties as one entity; after representing themselves to the public as one, the law will not allow them to hide behind two separate corporate structures to escape the consequences of their acts, which have resulted in damage to a third party. Any alleged "injustice" in this case resulted from plaintiff's own failure to effect service of process upon a defendant under the provisions of the Federal Rules of Civil Procedure.

Plaintiff further argues that a lower standard is to be applied in determining whether alter ego status exists when deciding a service of process question rather than the question of ultimate liability. Plaintiff has supplied us with several cases purportedly dealing with this matter: *Reul v. Sahara Hotel*, 372 F.Supp. 995 (S.D.Tex.1974) (foreign corporation was properly served); *Rea v. An-Son Corp.*, 79 F.R.D. 25, 32 (W.D. Okla.1978) (foreign corporation served properly under Oklahoma law); *Rollins v. Procter & Schwartz*, 478 F.Supp. 1137 (D.S.C. 1979) (jurisdiction, not propriety of the mode of service, at issue); *Dotson v. Fluor Corp.*, 492 F.Supp. 313 (W.D.Tex.1980) (jurisdiction under the Texas long-arm statute over foreign corporation "doing business" within the state through an intermediary at issue); *Fidenas A.G. v. Honeywell, Inc.*, 501 F.Supp. 1029, 1038 (S.D.N.Y.1980) (plaintiffs argued that *agency* analysis rather than the theory of piercing the corporate veil required less stringent test for imputing liability from one corporation through a "control link" corporation to another corporation); *Tiger Trash v. Browning-Ferris Industries, Inc.*, 560 F.2d 818, 824 (7th Cir. 1977) (discussing the "practical, non-technical business standard supplied by the phrase 'transacts business' in the Clayton Act venue provision."). These cases involve jurisdiction or *amenability* to service of process, rather than the *propriety* of service of process such as here. Even assuming arguendo plaintiff's proposition that some lower standard of scrutiny such as utilized by the courts in the above cases is applicable in this case, we find that plaintiff has failed to demonstrate that service upon Roehm GmbH through service on RG Industries was proper.

Plaintiff's arguments on the alter ego question have focussed exclusively on showing the connection between the Roehm brothers individually and RG. As we mentioned in our previous order, there has been no evidence to show that *Roehm GmbH* is the alter ego of the Roehms. That Roehm GmbH is the alter ego of the Roehm brothers has always been "assumed" or taken for granted by the plaintiff. The court enjoys no such freedom. To equate RG with Roehm GmbH requires establishing the individual Roehms as a "control link" between the two corporations. The court in *Fidenas A.G., supra*, was faced with such a situation. Plaintiffs there alleged that the defendants were the alter ego of the CHB Corporation, which was in turn the alter ego of the HBS Corporation (the alleged malfactor in the case).

> Even if this court were persuaded (which it is not) that the defendants and CHB should be treated as one corporation, there would still be another barrier to be surmounted—the fact that CHB and HBS are separate corporations, one incorporated in France and the other in Switzerland. To demonstrate that these corporate boundaries also should be ignored, the Fidenas plaintiffs assert similar, but more conclusory and less specific, facts. Since the Fidenas plaintiffs' asserted facts, viewed in the most favorable light, are insufficient to justify piercing the corporate veil between defendants and CHB, and since the necessity of leaping over yet another corporate boundary line surely increases substantially the difficulty of plaintiffs' task, this court sees no purpose to be served in further exploration of this uncharted territory, either in further discovery or at trial.

*Fidenas, supra*, at 1037, footnotes omitted.

In this case, the link is not an intermediate corporation but is a group of individuals. Plaintiff's bridge from RG to Roehm GmbH, even under the least exacting test imaginable, would still lack the vital link from the Roehms individually to Roehm GmbH.

More importantly, plaintiff makes no attempt to show that its attempted service complies with Federal Rule of Civil Procedure 4 or with the Kansas statute regarding service of process. This is the preliminary inquiry when the propriety of service is questioned. Plaintiff relies on the doctrine enunciated in *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), that due process requires notice "reasonably calculated" to apprise interested parties of the pending action. As the facts in this case have shown, service upon RG Industries was not notice "reasonably calculated" to apprise Roehm GmbH of the pendency of the action since it is uncontroverted that Roehm did *not* receive notice of the action as a result of the service on RG. In the affidavit of Heinrich P. Roehm, treasurer of Roehm GmbH, he states that "prior to January 12, 1981, [when the second attempt at service on Roehm GmbH was made] Roehm GmbH had not received any summons or complaint in this case, nor had it been notified that the case was pending against it." Roehm affidavit attached to Motion to Dismiss, Docket # 55. Where, as here, neither the statutory requirements nor the due process requirements under *Mullane* have been observed, the service of process cannot stand.

The other arguments made by plaintiff in her motion have been considered in our previous order, and we again find them to be without merit.

IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration and rehearing is denied.