**COTRACOM COMMODITY TRADING AG and Bendel Feed and Flour Mill, Ltd., Plaintiffs/Counter–Defendants,**

v.

**SEABOARD CORPORATION, Seaboard Trading & Shipping, Ltd. and Sasco Engineering Company, Defendants/Counter–Claimants,**

v.

**Industrie–Bau Nord AG, IBN Engineering GmbH and IBN Agrotrading AG, Counter–Defendants.**

**No. Civ.A. 97–2391–GTV.**

United States District Court, D. Kansas.

April 5, 2000.

---

Stephen M. Sacks, John C. Massaro, Arnold & Porter, Washington, DC, Patrick

J. Stueve, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, Roger D. Stanton, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Prairie Village, KS, for plaintiffs.

## MEMORANDUM AND ORDER

VanBEBBER, District Judge.

Plaintiffs, Cotracom Commodity Trading AG ("Cotracom") and Bendel Feed and Flour Mill, Ltd. ("Bendel"), brought this action asserting claims for breach of contract and breach of fiduciary relationship against defendants, Seaboard Corporation, Seaboard Trading & Shipping, Ltd., and SASCO Engineering Company (collectively "Seaboard"). Seaboard filed a counterclaim against plaintiffs for enforcement of two arbitration awards under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* With permission from the court, Seaboard amended its counterclaim, adding Industrie–Bau Nord AG ("IBN AG"), IBN Engineering GmbH ("IBN Engineering"), and IBN Agrotrading AG ("IBN Agrotrading") (collectively "IBN Group") as counterclaim-defendants. The case is before the court on IBN Group's motion to dismiss for lack of personal jurisdiction or, in the alternative, to dismiss for forum nonconveniens (Doc. 146).[1] For the reasons set forth below, the motion is granted, and IBN AG, IBN Engineering, and IBN Agrotrading are dismissed from the case.

### I. Factual Background

Bendel is a corporation organized under the laws of Nigeria, with its principal place of business in Benin City, Nigeria. Bendel is involved in the business of milling products from wheat for consumption in Nigeria. Cotracom is a corporation organized under the laws of Switzerland with its

---

1. The case is also before the court on Seaboard's request for leave to file a supplemental response to IBN Group's motion to dismiss (Doc. 256). Seaboard's request comes several months after its original response was due and, for that reason, it is denied.

principal place of business in Steinhausen, Switzerland. Cotracom is engaged in the business of buying wheat and other commodities for affiliated entities. Cotracom purchases wheat for use by Bendel.

Seaboard Corporation is a Delaware corporation with its principal place of business in Shawnee Mission, Kansas. Seaboard Trading & Shipping, Ltd. is a Minnesota corporation with its principal place of business in Shawnee Mission, Kansas. Seaboard Trading & Shipping is a wholly owned subsidiary of Seaboard Corporation. SASCO Engineering Company is a foreign corporation that is also a wholly owned subsidiary of Seaboard Corporation.

IBN AG is a Swiss company with its principal place of business in Steinhausen, Switzerland. IBN AG operates as a holding company that finances and holds the shares of subsidiaries. IBN AG owns 100% of Cotracom's stock, and 40% of Bendel's stock. IBN Engineering is a German company with its principal place of business in Hamburg, Germany. IBN Engineering is a wholly owned subsidiary of IBN AG. IBN Agrotrading is a Swiss company with its principal place of business in Steinhausen, Switzerland.

In 1992, a representative of Seaboard approached Cotracom and suggested that Cotracom purchase wheat for Bendel in the United States to take advantage of the Export Enhancement Program, a government subsidizing program. Both Cotracom and Bendel were unfamiliar with the considerations relating to the purchase of wheat in the United States. Seaboard propositioned Cotracom that if it was willing to use Seaboard's services to purchase the wheat, Seaboard would provide the necessary advice and assistance. Seaboard also indicated that it had expertise in providing logistical services relating to transportation of wheat from the United States to Africa, and that it would provide advice and assistance to plaintiffs for making appropriate arrangements.

Thereafter, plaintiffs purchased significant quantities of wheat in the United States through Seaboard, relying on Seaboard's expertise and advice. Pursuant to Seaboard's advice, the wheat was purchased in the name of Bendel as the end user so as to qualify for the subsidizing program. The wheat normally was purchased only after consultation between Seaboard and Cotracom; however, in many instances, plaintiffs gave Seaboard full discretion to order wheat on its behalf.

In March 1996, Seaboard suggested that plaintiffs consider purchasing wheat for future delivery because of an expected increase in wheat prices. Relying on Seaboard's advice, plaintiffs purchased wheat for future delivery up to May 1997. Shortly thereafter, wheat prices declined greatly, causing plaintiffs economic loss.

## II. Discussion[2]

IBN AG, IBN Engineering, and IBN Agrotrading argue that they should be dismissed as parties from this lawsuit on the basis of lack of personal jurisdiction. The standard that governs a motion to dismiss for lack of personal jurisdiction is well-established: The claimant bears the burden of establishing personal jurisdiction over the opposing party. Prior to trial, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the claimant need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent that they are uncontroverted by the opposing party's affidavits. If the parties present conflicting affi-

2. The court extensively reviewed the record in this case, and carefully considered each argument set forth by Seaboard before reaching its decision. In the interest of brevity, howev- er, some unsupported arguments, repetitive arguments, and irrelevant points have been excluded from this written opinion.

davits, all factual disputes are resolved in the claimant's favor, and the claimant's prima facie showing is sufficient notwithstanding the contrary presentation by the opposing party. *See Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984); *see also Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1130–31 (10th Cir.1991).

▮ In a suit in federal court based on diversity of citizenship, the law of the forum state determines personal jurisdiction over a non-resident defendant. *See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1304 (10th Cir. 1994). In Kansas, analyzing a motion to dismiss for lack of personal jurisdiction involves a two-step process. First, the court must determine whether it has personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60–308(b).[3] Second, the court must determine whether the exercise of such jurisdiction comports with due process. *See Federated Rural Elec.,* 17 F.3d at 1304–05.[4]

▮ Due process requires that a defendant have certain minimum contacts with the forum state sufficient to guarantee that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The "minimum contacts" requirement generally is satisfied when a defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and the claims against him arise out of those contacts. *Kuenzle v. HTM Sport–Und Freizeitgerate AG,* 102 F.3d 453, 455 (10th Cir.1996).

Seaboard claims that the court has personal jurisdiction over IBN AG, IBN Engineering, and IBN Agrotrading because (1) each has directly transacted business in Kansas, (2) each has transacted business and entered into contracts in Kansas through plaintiffs, its instrumentality, and (3) each has transacted business and entered into contracts through plaintiffs, its alter ego.

### IBN AG

▮ Seaboard claims that § 60–308(b) authorizes personal jurisdiction over IBN AG because IBN AG directly transacted business in Kansas. The court's examination of the record reveals a few limited business transactions involving IBN AG that may have occurred in Kansas. The court concludes that those transactions, however, are insufficient to justify exercising personal jurisdiction over IBN AG. Most notably, the transactions do not give rise to Seaboard's claims against IBN AG in this case. *See* K.S.A. § 60–308(b) (pro-

---

**3.** Section 60–308(b) provides, in pertinent part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person ... to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (1) Transaction of any business within this state; ...
>
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state....

**4.** "[T]hese inquiries are for all intents and purposes the same because the Kansas long-arm statute, K.S.A. 60–308(b), has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." *Flannagan v. Bader,* 905 F.Supp. 933, 936 (D.Kan. 1995) (citing *Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317 (D.Kan.1995)); *see Federated Rural Elec.,* 17 F.3d at 1305; *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir. 1990).

viding that transacting business in the state of Kansas thereby submits the person to the jurisdiction of Kansas courts "as to any cause of action arising from the [transacting of business]").

■ Seaboard next claims that § 60–308(b) authorizes personal jurisdiction over IBN AG because IBN AG transacted business and entered into contracts in Kansas through plaintiffs, its instrumentality. Section 60–308(b), "which authorizes service on anyone who commits certain acts 'through an agent or instrumentality,' permits service of process on a non-resident corporation which has in the forum an affiliated corporation that has committed one of those acts at the direction or for the benefit of the non-resident corporation." *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483, 490 (D.Kan.1978). Thus, § 60–308(b) authorizes "service on a nonresident that has directed and controlled those acts of the instrumentality that give rise to plaintiffs' claims or that has purposefully sought and foreseeably benefitted from its active relationship with an affiliated corporation that has transacted business in the forum giving rise to plaintiffs' claims." *See Grimandi v. Beech Aircraft Corp.*, 512 F.Supp. 764, 769 (D.Kan.1981) (citing *Energy Reserves Group*, 460 F.Supp. at 513).[5]

■ Seaboard claims that IBN AG directed and controlled the acts of plaintiffs that give rise to its claims in this case. In support, it first alleges that two letters written by Mr. Frank Baehr show that "IBN AG manages plaintiffs." In the letters, Frank Baehr makes general statements concerning IBN AG.[6] Frank Baehr, however, is not an employee of IBN AG; instead, he is the Managing Director of IBN Engineering and the Managing Director and President of Cotracom. Seaboard offers no explanation as to why his statements, even assuming they supported its assertion, should be attributed to IBN AG.

Seaboard secondly alleges that minutes taken from a meeting of the Board of Directors of Bendel show that "IBN [AG] makes the decisions on how much wheat Bendel purchases and at what price." Those minutes, taken on August 2, 1996, include the following statements:

> [The General Manager] reported that the planned target for wheat processed for this period is 27,000 tons whilst 28,000 tons was achieved. [The General Manager] said that due to the drastic and unexpected wheat price escalations both turnover and margins will exceed the given targets for the year.... [The General Manager] informed the Board that IBN has decided on early forward buying of wheat and, thereby, has secured a constant price for most of the year. Giving [sic] the present financial parameters, management expects that this situation will provide the company with sufficient margins to show profit by the end of the year.

The court concludes that the minutes do not show that IBN AG "makes the decisions on how much wheat Bendel pur-

---

5. "The statutory language, 'agent or instrumentality' extends service beyond non-resident corporations who act merely as 'alter egos' of an affiliated corporation in the forum and thus permits service on the non-resident corporation without a determination whether the corporate veil might be pierced." *Energy Reserves Group*, 460 F.Supp. at 490.

6. Frank Baehr writes:
   Our head office [IBN AG] is located in Switzerland.... Through our European companies we supply [Bendel] with raw material, such as wheat ... flour additives and technical equipment.
   ***
   IBN AG the holding company in Steinhausen, Switzerland functions as the general contractor of the different projects, sourcing the financing for the projects, supplying the management and holding the shares of the different companies abroad.

chases and at what price." The minutes do not state that "IBN AG" has decided on early forward buying of wheat; instead they refer solely to "IBN." IBN AG has presented affidavits stating that it "has never sold wheat to Bendel and has never told Bendel how much wheat to buy or at what price." Moreover, the uncontroverted evidence shows that Cotracom, which is a wholly owned subsidiary and member of the IBN group of companies, purchased wheat for Bendel and, in fact, purchased wheat for future delivery up to May 1997.

Finally, Seaboard claims that § 60–308(b) authorizes personal jurisdiction over IBN AG because IBN AG transacted business and entered into contracts in Kansas through plaintiffs, its alter ego. A corporation that transacts business through the instrumentality of an alter ego corporation is subject to service for causes of action arising therefrom. *See Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362 (10th Cir.1974). Thus, if a subsidiary corporation transacts business in Kansas acting as the mere alter ego of its parent corporation, the court may treat the two corporations as one and consider the subsidiary's relationship with Kansas to establish jurisdiction over the parent corporation. This is commonly referred to as piercing the corporate veil. *See Quarles,* 504 F.2d 1358; *Energy Reserves Group,* 460 F.Supp. 483.

■ A parent company has a separate corporate existence and is treated separately from its subsidiary in the absence of circumstances justifying disregard of the corporate entity. *See Quarles,* 504 F.2d at 1362. Circumstances justify disregard if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized. *See id.* Thus, "[w]here a nonresident corporation is organized for the very purpose of holding and controlling the stock of a resident corporation and

thus manages and directs the internal affairs of the resident corporation, courts have disregarded the corporate entity and treated it as the alter ego of the nonresident corporation for the purpose of service of process...." *Id.* (quoting *Steinway v. Majestic Amusement Co.,* 179 F.2d 681, 683 (10th Cir.1949)). Ultimately, courts will disregard the fiction of a separate legal entity "when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal." *See Dean Operations, Inc. v. One Seventy Assocs.,* 257 Kan. 676, 896 P.2d 1012, 1016 (1995).

■ The effort in deciding whether to pierce the corporate veil is to ascertain from the total facts the extent of actual control exercised by the parent over the internal affairs of its subsidiary. *See Quarles,* 504 F.2d at 1362. The following ten factors should be considered:

(1) whether the parent owns all or a majority of the capital stock of the subsidiary;

(2) whether the parent and subsidiary have common directors or officers;

(3) whether the parent finances the subsidiary;

(4) whether the parent subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5) whether the subsidiary has grossly inadequate capital;

(6) whether the parent pays the salaries or expenses or losses of the subsidiary;

(7) whether the subsidiary has substantially no business except with the parent or no assets except those conveyed to it by the parent;

(8) whether in the papers of the parent, and in the statements of its

officers, 'the subsidiary' is referred to as such or as a department or division;

(9) whether the directors or executives of the subsidiary do not act independently in the interests of the subsidiary but take direction from the parent; and

(10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*See Grimandi,* 512 F.Supp. at 769–70 (quoting *Milgo Elec. Corp. v. United Bus. Communications,* 623 F.2d 645, 660 (10th Cir.1980)).

The court determines that the evidence in the record falls short of establishing that plaintiffs are the alter ego of IBN AG. Seaboard points out that IBN AG is the parent company of Cotracom, owning 100% of Cotracom's stock, and that IBN AG is the largest shareholder (40%) of Bendel's stock. The fact that one corporation is the parent of the other, however, without a showing that the one exercises undue control over the internal affairs of the other, is insufficient to warrant treating the two corporations as one. *See Dean Operations,* 896 P.2d at 1017 (discussing *Schmid v. Roehm GmbH,* 544 F.Supp. 272 (D.Kan.1982)). Mere ownership of a corporation will not in and of itself justify a disregard of the corporate entity. *See Schmid,* 544 F.Supp. at 274 (citing *Amoco Chemicals Corp. v. Bach,* 222 Kan. 589, 567 P.2d 1337 (1977)).

Seaboard presents evidence that IBN AG finances plaintiffs and has guaranteed payment for contracts on behalf of plaintiffs. Again, without evidence of undue control, Seaboard's evidence is insufficient to justify a disregard of plaintiffs' separate corporate status from IBN AG. *See Quarles,* 504 F.2d at 1363–64 (citing *Taylor,* 96 F.2d 693, and noting that a parent's financing of its subsidiary will not make

the subsidiary a mere instrumentality of the parent). Seaboard alleges that the financing and guarantees, among other things, show that Cotracom is undercapitalized. The court has reviewed the evidence, however, and determines that there is insufficient evidence to conclude that Cotracom would be grossly undercapitalized absent the financial assistance of IBN AG. Without such evidence, the circumstances do not justify treating the two corporations as one. *See Dean Operations,* 896 P.2d at 1019 (affirming the trial court's decision to pierce a subsidiary's corporate veil and hold the parent liable in part because the subsidiary would have been unable to survive absent substantial financial assistance by the parent, and the subsidiary was unable to obtain financing from third parties absent a guaranty from the parent).

Seaboard points out that the president of IBN AG is also a director of Bendel, and that the president of Cotracom is also a director of IBN AG. Evidence that the two corporations have officers in common, however, without evidence that the officers fail to exercise independent judgment with respect to each corporation is insufficient to warrant treating the two corporations as one. *See Dean Operations,* 896 P.2d at 1017 (discussing *Schmid,* 544 F.Supp. 272). This is true even though Bendel's articles of incorporation require that at least two of its directors represent IBN AG. *See Dean Operations,* 896 P.2d at 1017 (discussing *Schmid,* 544 F.Supp. 272, and noting that the fact that a parent selects from its own directors and officers the majority of the directors of the other is, without more, insufficient to warrant treating the two corporations as one).

Seaboard presents evidence that IBN AG and Cotracom have similar logos for their companies. The court determines that this evidence is innocuous because the logos are not identical and the companies are undoubtedly affiliated with one anoth-

er—one is the parent of the other. It does not appear to the court that the logos are in any way an attempt either to confuse third parties as to the true identities of the companies or to hold themselves out to third parties as one company with separate divisions.

Finally, Seaboard presents evidence that IBN AG and Cotracom share the same address, telephone number, and telefax number in Steinhausen, Switzerland; that IBN AG and Cotracom (as well as all of the other members of the IBN group of companies) are connected via a computer network; and that the same person prepares the tax returns and performs the bookkeeping and financial management for all of the IBN companies. The court determines that these facts are insufficient to show that Cotracom is the alter ego of IBN AG: While the facts indicate that IBN AG and Cotracom are related to one another, they do not indicate that IBN AG possesses "such domination of finances, policy, and practices ... that [Cotracom] has no separate mind, will, or existence of its own and is but a business conduit for [IBN AG]." *Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 896 P.2d 1012, 1016 (1995).

Upon total review of the record, the court determines that the evidence is insufficient to support a conclusion that plaintiffs are the alter ego of IBN AG; the evidence is insufficient to establish that IBN AG exercises such control or command over the internal affairs of either Cotracom or Bendel that the court should disregard their corporate identities and treat them as one and the same with IBN AG.

### IBN Engineering

■ Seaboard claims that § 60–308(b) authorizes personal jurisdiction over IBN Engineering because IBN Engineering directly transacted business in Kansas. There is negligible evidence, however, ei-

ther that IBN Engineering transacted business in Kansas, or that any such transaction gives rise to Seaboard's claims against it. Seaboard claims that IBN Engineering's Chief Financial Officer, Eyal Leave, transacted business by meeting with banks in the United States. It is doubtful whether an inquiry as to the possibility of obtaining financing from a bank qualifies as transacting business. Regardless, however, those alleged transactions did not take place in Kansas as required by § 60–308(b). Seaboard also claims that IBN Engineering guaranteed payment for contracts between plaintiff and Seaboard. There is no allegation, however, that such guarantees are at all related to Seaboard's claims against IBN Engineering in this lawsuit. *See* K.S.A. § 60–308(b) (providing that transacting business in the state of Kansas thereby submits the person to the jurisdiction of Kansas courts "as to any cause of action arising from the [transacting of business]").

■ Seaboard next claims that § 60–308(b) authorizes personal jurisdiction over IBN Engineering because IBN Engineering transacted business and entered into contracts in Kansas through plaintiffs, its instrumentality. As previously stated, § 60–308(b), permits service of process on a non-resident corporation which has in the forum state an affiliated corporation that has transacted business or entered into contracts at the direction of or for the benefit of the non-resident corporation. *See Energy Reserves Group*, 460 F.Supp. at 490. Seaboard primarily claims that two pieces of evidence tend to show that IBN Engineering entered into the contracts at issue in this case at the direction of or for the benefit of plaintiffs. First, Seaboard points to the following two statements made by plaintiff Bendel:

> Cotracom [is] a company based in Switzerland [with its] principal place of business at Steinhausen. Day to day management of [Cotracom] is conducted from Hamburg.

Seaboard claims that these assertions establish that IBN Engineering conducts the day-to-day management of Cotracom. The proffered statements, however, do not support such allegation. The statements are silent as to who conducts the management; instead they merely assert that the management is conducted in Hamburg. Moreover, Seaboard states in another section of its briefing that Cotracom has offices at "Muhlendamm 66, Hamburg."

Second, Seaboard points to various items of correspondence regarding Cotracom's purchases of wheat on behalf of Bendel. The correspondence was sent in care of Mr. D. Kohlhase and Mr. F. Baehr at "I.B.N. Hamburg." Seaboard claims that "I.B.N. Hamburg" is, in fact, IBN Engineering.

The court determines that there is insufficient evidence to conclude that "I.B.N. Hamburg" is IBN Engineering, and it will not exercise personal jurisdiction over IBN Engineering based on the attenuated possibility. "I.B.N. Hamburg" apparently is nonexistent. While the name "I.B.N. Hamburg" is more akin to "IBN Engineering" than "Cotracom," the correspondence was sent in care of Cotracom officers.[7] Moreover, Cotracom is a wholly owned subsidiary of IBN AG with offices located in Hamburg.

■ Finally, Seaboard claims that § 60–308(b) authorizes personal jurisdiction over IBN Engineering because IBN Engineering transacted business and entered into contracts in Kansas through plaintiffs, its alter ego. The court concludes that the record contains insufficient evidence to support this assertion.

IBN Engineering is not the parent company of plaintiffs and does not own any stock of plaintiffs. IBN Engineering has no officer in common with Bendel and only one officer in common with Cotracom. IBN Engineering is undoubtedly affiliated with Cotracom, as they are both IBN entities; however, affiliation, without more, is insufficient to justify disregard of Cotracom's separate corporate status. *See Dean Operations,* 896 P.2d at 1017 (discussing *Schmid,* 544 F.Supp. 272, and noting that the mere fact that one corporation is the parent of the other is insufficient to warrant treating the two corporations as one).

Seaboard points to several circumstances which it believes justify a determination that plaintiffs are the alter ego of IBN Engineering. The court, however, concludes that each is insufficient. For instance, Seaboard points out that, in 1993, IBN Engineering guaranteed payment for contracts between plaintiffs and Seaboard. There is no evidence, however, that plaintiffs would be grossly undercapitalized absent the financial assistance of IBN Engineering. Seaboard also points out that IBN Engineering once confirmed an order for rapeseed on behalf of Cotracom. In doing so, IBN Engineering specifically stated that it was "acting for" Cotracom. Such evidence shows merely that IBN Engineering once acted as an agent for Cotracom; it does not show that IBN Engineering controlled the decision-making process or the day-to-day business of Cotracom.[8]

Upon total review of the record, the court determines that the evidence is in-

---

7. Seaboard alleges that Dieter Kohlhaase is the Vice President of Cotracom and that, while Frank Baehr is the Managing Director of IBN Engineering, he is also the Managing Director and President of Cotracom.

8. Seaboard also makes several arguments similar to those that it made with respect to IBN AG. Specifically, it points out that Cotracom and IBN Engineering share the same address, telephone number, and telefax number in Hamburg, Germany; that Cotracom and IBN Engineering have similar logos for their companies; that Cotracom and IBN Engineering are connected via a computer network that connects all IBN related companies; and that the same person prepares the tax returns and performs the bookkeeping and financial management for all IBN companies. For the same reasons as discussed ear-

sufficient to support a conclusion that plaintiffs are the alter ego of IBN Engineering; the evidence is insufficient to establish that IBN Engineering exercises such control or command over the internal affairs of either Cotracom or Bendel that the court should disregard their corporate identities and treat them as one and the same with IBN Engineering.

### IBN Agrotrading

Seaboard claims that § 60–308(b) authorizes personal jurisdiction over IBN Agrotrading because IBN Agrotrading directly transacted business in Kansas. Contrary to Seaboard's assertion, there is no evidence in the record that IBN Agrotrading transacted business in Kansas; instead, the only evidence is that "IBN Agro Trading has purchased wheat in the United States."

Seaboard next claims that § 60–308(b) authorizes personal jurisdiction over IBN Agrotrading because IBN Agrotrading transacted business and entered into contracts in Kansas through plaintiffs, its instrumentality. The record is completely devoid, however, of any evidence that plaintiffs transacted business or entered into the contracts at issue in this case at the direction of or for the benefit of IBN Agrotrading. *See Energy Reserves Group,* 460 F.Supp. at 490.

Finally, Seaboard claims that § 60–308(b) authorizes personal jurisdiction over IBN Agrotrading because IBN Agrotrading transacted business and entered into contracts in Kansas through plaintiffs, its alter ego. The court concludes that the record contains insufficient evidence to support Seaboard's assertion.

IBN Agrotrading is not the parent company of plaintiffs and does not own any stock of plaintiffs. IBN Agrotrading does apparently have two officers in common with Cotracom; however, the fact that two corporations may have officers in common is, without more, insufficient to warrant treating the two corporations as one. *See Dean Operations,* 896 P.2d at 1017 (discussing *Schmid,* 544 F.Supp. 272).

Seaboard alleges that IBN Agrotrading has taken the place of Cotracom in the IBN Group, including wheat sales to Bendel, and that IBN Agrotrading has hired most of the former employees of Cotracom. In support, Seaboard offers deposition testimony of Frank Baehr. The court determines that the testimony offered does not support Seaboard's assertions. Even if it did, the court concludes that those circumstances alone would not justify a disregard of IBN Agrotrading's legal existence separate and apart from plaintiffs.

Upon total review of the record, the court determines that the evidence is insufficient to support a conclusion that plaintiffs are the alter ego of IBN Agrotrading; the evidence is insufficient to establish that IBN Agrotrading exercises such control or command over the internal affairs of either Cotracom or Bendel that the court should disregard their corporate identities and treat them as one and the same with IBN Agrotrading.

IT IS, THEREFORE, BY THE COURT ORDERED that IBN Group's motion to dismiss (Doc. 146) is granted, and Industrie–Bau Nord AG, IBN Engineering GmbH, and IBN Agrotrading AG are dismissed from the case for lack of personal jurisdiction.

IT IS FURTHER BY THE COURT ORDERED that Seaboard's motion for leave to file a supplemental response to IBN Group's motion to dismiss (Doc. 256) is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

lier with respect to IBN AG, the court determines each argument insufficient.