DENNIS TIERNEY, Plaintiff-Appellant, v. BURLINGTON NORTHERN RAILROAD COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—90—1296

Opinion filed December 30, 1992.—Rehearing denied January 29, 1993.

Edward L. Osowski, of Chicago, for appellant.

Kenneth J. Wysoglad & Associates, of Chicago (John F. Newell, of counsel), for appellee.

JUSTICE TULLY delivered the opinion of the court:

This is a personal injury action, arising out of injuries incurred by plaintiff, Dennis Tierney, while working on property owned by defendant, Burlington Northern Railroad. Plaintiff sued for recovery under the Federal Employers' Liability Act (FELA) (45 U.S.C. §§51 through 60 (1988)), which imposes liability upon railroads for the negligent death or injury of its employees. This cause was originally filed in the United States District Court for the Northern District of Illinois, wherein a summary judgment motion by defendant was denied. The case was then voluntarily dismissed pursuant to an agreement by all parties that all discovery taken in the Federal cause would be applicable to a refiled action. Subsequent to refiling in the circuit court of Cook County, the Honorable Dean J. Sodaro presiding, granted summary judgment in favor of the defendant railroad, finding that plaintiff was not an "employee" of the railroad at the time of his accident, and therefore, he could not bring an action pursuant to FELA.

The central issue on appeal is whether or not plaintiff, Dennis Tierney, was an "employee" of Burlington Northern Railroad within the context of the Federal Employers' Liability Act (FELA). If we find that there exists a genuine issue of material fact as to this question, then the trial court improperly granted summary judgment in favor of the defendant railroad.

At the time of the accident, plaintiff was employed by BN Transport, Inc. (BN Transport), a wholly owned trucking subsidiary of Burlington Northern, Inc., the holding company which also owns Burlington Northern Railroad. Tierney testified in his deposition

that he had worked for BN Transport since 1977, performing various functions: spotter (taking trailers from one area to another to be placed on flat cars); tie-down man; checker; freight delivery and trailer pick up. Plaintiff also rotated among various work locations, primarily facilities at 16th Street, 36th Street and Ogden Avenue in the City of Chicago. Plaintiff spent 50% to 60% of his time working within the railroad yard or at defendant's 16th Street location in Chicago. The remainder of the time he made over-the-road deliveries of railroad trailers. According to Tierney, the people supervising his work at 16th Street were BN Transport employees completely "responsible to the railroad." While setting up trains at 16th Street, Tierney reported to Burlington Northern Railroad employees at Ogden Avenue. Tierney was also responsible to the railroad employees who operated the trains, to make sure equipment was securely fastened down.

Plaintiff was injured in 1982 at a BN Transport facility at 36th Street and Pulaski Road (36th Street) in Chicago, which housed BN Transport trailers as well as Burlington Northern Railroad trailers. At this facility, plaintiff believed he dealt with employees of both BN Transport and Burlington Northern Railroad. Supervisory personnel from the railroad also gave Tierney instructions while working at this location. Tierney worked intermittently at this facility between 1977 and 1982. He took orders from dock foremen, dispatchers, and terminal managers, who instructed him on safety and where to put the trailers when they arrived. Tierney did not know whether they were employees of BN Transport or BN Railroad. Tierney also stated that he was directly supervised by Burlington Northern Railroad personnel at the other loading sites where he worked.

Tierney further testified that he believed he was employed by Burlington Northern Railroad during this entire period from 1977 to 1982. Although "BN Transport" was written on the delivery trucks, Tierney assumed he worked for Burlington Northern Railroad, since he received his employee physical by a Burlington Northern doctor and he worked in the Burlington Northern Railroad yards. At 36th Street, Tierney would unload freight from one trailer, transfer it to another trailer and prepare it to be shipped to another destination. At times, he would pick up trailers from the railroad and bring them back to the 36th Street yard. On occasion, he would haul freight which included railroad car equipment.

Although he did not actually work on or about the trains in the yard at 36th Street, he would pick up "piggyback" railroad trailers

(containing railroad insignias) from various locations and deliver them to 36th Street. He would also transfer similar cars from 36th Street to other locales. The location at 36th Street was not equipped with tracks, unlike the Ogden Avenue and 16th Street locations, where plaintiff also worked.

On the day of the accident, Tierney "punched in" at 36th Street in a building displaying the "Burlington Northern" insignia. He spoke to the dock foreman, who instructed him as to which trailers to pull away from the dock, which needed to be hooked up, and as road trailers arrived, he told plaintiff where to hook them up for unloading. Just prior to the accident, the dock foreman called plaintiff up onto the dock. As he climbed up a ladder fastened to the dock, it pulled away from the dock and he fell. Plaintiff suffered injuries to his right shoulder and neck area and, as a result, he can no longer function as a truck driver. At the time of the accident, plaintiff was hooking a tractor to a Burlington Northern Railroad trailer, containing railroad parts. According to Tierney, such trailers were customarily picked up from a Burlington Northern Railroad yard. Tierney could not identify the person responsible for attaching the ladder to the dock or whether he worked for Burlington Northern Railroad.

As a preliminary matter, plaintiff asserts that the previous denial of defendant's motion for summary judgment in the prior Federal court proceeding should have been considered the "law of the case" in the later circuit court proceeding. In the "Stipulation and Agreement" both parties agreed that "all discovery had and taken in the federal cause shall be applicable to the refiled [State] action." Plaintiff contends that a prior finding of a genuine issue of material fact in the Federal case should have defeated defendant's similar motion for summary judgment in the circuit court.

■■ It is undisputed by both parties that Federal substantive law applies to actions brought under FELA. (*Dice v. Akron, Canton & Youngstown R.R. Co.* (1952), 342 U.S. 359, 96 L. Ed. 398, 72 S. Ct. 312.) However, it is well settled that the effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. (*In re Piper Aircraft Distribution System Antitrust Litigation* (8th Cir. 1977), 551 F.2d 213.) Although the dismissal in this case rendered all the prior issues and orders a nullity (see *National R.R. Passenger Corp. v. International Association of Machinists & Aerospace Workers* (1st Cir. 1990), 915 F.2d 43), the parties agreed to preserve "all discovery" which had been previously filed in the

Federal action. Nothing in the stipulation even remotely suggests that the parties intended to preserve prior judgments and orders from the Federal case. We therefore find that the denial of summary judgment in favor of defendant in the prior Federal case was not binding upon the circuit court in the refiled action.

■ We now turn to the central issue of whether plaintiff was an "employee" within the scope of the Federal Employers' Liability Act (FELA)(45 U.S.C. §§51 through 60 (1988)). Under FELA, a railroad is liable for negligently causing the death or injury of any person "while he is employed" by the railroad. There are four possibilities for imposing liability against an employer railroad:

(1) plaintiff is actually employed by the railroad;

(2) plaintiff is a borrowed servant of the railroad;

(3) plaintiff works for two employers (his own and the railroad) simultaneously;

(4) plaintiff's employer is a servant of the railroad and, thus, plaintiff is a "subservant" of the railroad.

The trial court ruled out possibilities (1) and (2) and evaluated whether there existed a genuine issue of material fact under scenario (3) or (4). At the hearing on defendant's motion for summary judgment, the trial court analyzed the facts under the guidelines of *Kelley v. Southern Pacific Co.* (1974), 419 U.S. 318, 42 L. Ed. 2d 498, 95 S. Ct. 472. In *Kelley*, as in the instant case, plaintiff was employed by a trucking company which was a wholly owned subsidiary of the defendant railroad. Plaintiff was injured when he fell from atop a railroad car. As to the question of whether plaintiff Kelley was working for the trucking company and the railroad simultaneously, the Supreme Court noted that railroad employees did not assume "a significant supervisory role" in the trucking company's operations and, moreover, Kelley was not being supervised by railroad personnel at the time of the injury. As to whether the trucking company was a servant of the railroad, the Court found "[t]he two companies were sufficiently distinct in organization and responsibility that there was no apparent overlap in supervisory ranks." (*Kelley*, 419 U.S. at 327, 42 L. Ed. 2d at 508, 95 S. Ct. at 478.) On these facts, the Court concluded that Kelley was not sufficiently supervised by the railroad in order to satisfy the definition of railroad employee under the Federal Employers' Liability Act.

■ In the instant case, plaintiff was often supervised by railroad personnel while working for BN Transport. The degree of supervision or contact with railroad employees varied with the type

of job assigned as well as the locale. The critical question, however, is whether Tierney was serving two masters simultaneously at the time of his injury.

Burlington Northern possessed a "leasehold interest" in the building and the land where the accident occurred. The dock foreman, assistant area manager and regional terminal manager present at the accident scene have since resigned. All were employees of BN Transport.

Mel Heard, a ramp manager for Burlington Northern Railroad, stated at his deposition that he supervised the work of clerks, operators and spotters and he reported to the terminal manager. Heard said that the assistant terminal manager and ramp manager at the location where he worked were employed by the railroad, but the terminal manager at Ogden Avenue worked for BN Transport. The trailers at the 36th Street location were leased from the railroad. Heard did not know of any railroad employees to be working at 36th Street. Spotters, employed by BN Transport, would complete forms or "load lists" and return them to railroad clerks in the office. After trailers were loaded on the trains by BN Transport employees, the ramp manager would inspect the train. At Ogden Avenue the ramp manager worked for the railroad; at 16th Street, he worked for BN Transport. According to Heard, the docks and ladders at 36th Street were inspected and maintained by the BN Transport maintenance department.

Although Tierney was supervised by railroad employees at various locations, he did not present any evidence to raise a genuine issue of material fact as to the 36th Street location, where the accident at issue occurred. We, therefore, find no error in the trial court's conclusion that Tierney failed to present enough evidence of serving two masters simultaneously, BN Transport and Burlington Northern Railroad, at the time of his injury.

■ We next consider whether there was a genuine issue of material fact as to whether BN Transport was merely a servant of Burlington Northern Railroad. In the case at hand, the railroad owned all of the stock of BN Transport and directed the operations of BN Transport in accordance with a 1974 agreement between BN Transport and Burlington Northern Railroad. However, stock ownership alone is not sufficient to deem BN Transport to be a servant of Burlington Northern Railroad.

Plaintiff also presented evidence that his workers' compensation claims were handled by Burlington Northern Railroad's in-

house counsel, arguing that BN Transport and Burlington Northern Railroad were one and the same company.

Jack Lambrecht, general claims manager for Burlington Northern Railroad Company, testified at his deposition that his department would handle subrogation claims on behalf of BN Transport, to recover monies paid pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*). The railroad handled all of BN Transport's workers' compensation claims in the Chicago area, whether or not they resulted from events on railroad property.

Conflicting evidence as to whether or not BN Transport was merely a servant of Burlington Northern Railroad was presented by both sides. This evidence presents a genuine issue of material fact to be decided by the trier of fact. A jury should be permitted to decide whether in fact BN Transport acted as a servant of Burlington Northern Railroad, such that plaintiff performed as a subservant and employee of the railroad for purposes of FELA. The evidence presented by plaintiff as to defendant's right to control his activities at work locations, other than the 36th Street location where the accident occurred, could not be introduced to show plaintiff was serving two masters simultaneously. However, this evidence may be introduced to demonstrate the existence of a master-servant relationship between BN Transport and the defendant railroad.

We conclude the late Honorable Dean J. Sodaro erred in granting summary judgment in favor of defendant Burlington Northern Railroad. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN, P.J., and RIZZI, J., concur.