No. 72,712

MICHAEL E. DOUGHTY, *Appellant,* v. CSX TRANSPORTATION, INC., *Appellee.*
(905 P.2d 106)

494

Opinion filed October 27, 1995.

*John E. Rogers*, of Shamberg, Johnson & Bergman, of Overland Park, argued the cause, and *John M. Parisi*, of the same firm, was with him on the briefs for appellant.

*Keith T. Borman*, of Kansas City, Missouri, argued the cause, and *Rebecca J. Lubbers*, of Shook, Hardy & Bacon, of Overland Park, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an action brought by an employee of a wholly owned subsidiary corporation who was injured at work. After claiming and receiving workers compensation benefits as an employee of the subsidiary, the employee brought suit against the parent corporation for benefits pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* (1988), by alleging that the parent corporation, a railroad, was the alter ego of the subsidiary corporation. The worker claimed the separate identities of the two corporations was a fiction created to allow the parent corporation to evade its FELA obligations. The district court granted summary judgment to the parent corporation, holding that the parent corporation was not the alter ego of the subsidiary corporation and therefore could not be liable under FELA as the worker's employer. The worker appeals. Pursuant to K.S.A. 20-3018(c), this case was transferred from the Court of Appeals.

In 1987, appellant Michael E. Doughty became employed by Fruit Growers Express Company (FGE) in Kansas City, Kansas. Subsequently, FGE became a wholly owned subsidiary of CSX Transportation, Inc. (CSXT). On January 2, 1992, Doughty was

injured when an FGE forklift he was repairing unexpectedly engaged in gear and ran over him. Doughty filed a workers compensation claim alleging he was an employee of FGE. Doughty received $50,000 in settlement of his workers compensation claim. Doughty notes that in the course of resolving his workers compensation claim, attorneys for FGE submitted to his attorney a General Release setting forth as a condition of any settlement of his workers compensation claim that he also release any claim he might have against CSXT. Doughty did not execute the General Release but instead signed a limited release that preserved any claim against CSXT.

Doughty then brought this FELA action against CSXT for the same injuries for which he had received state workers compensation benefits. FGE is not a railroad and is not covered by FELA. To maintain a claim under FELA, Doughty must prove that he was working for CSXT, a railroad, at the time of his injury. See *Bradsher v. Missouri Pacific R.R.*, 679 F.2d 1253, 1255 n.5 (8th Cir. 1982). In the action, Doughty asserted that CSXT, as the parent corporation of FGE, was the alter ego of FGE and therefore liable under FELA as his true employer. Under state workers compensation, any recovery by Doughty in the FELA action against CSXT is subject to a lien. See K.S.A. 44-504. Interestingly, Doughty also filed a prior claim for workers compensation for injuries sustained as an employee of FGE on June 27, 1989. That claim was settled in June 1992. Nowhere in his 1989 or 1992 workers compensation claims did Doughty assert that he was an employee of any entity other than FGE.

Both parties filed motions for summary judgment. In its memorandum opinion, the district court made 67 separate findings of fact and analyzed the factors set forth in *Schmid v. Roehm GmbH*, 544 F. Supp. 272, 275 (D. Kan. 1982). See *Intern. U., United Auto., Etc. v. Cardwell Mfg. Co.*, 416 F. Supp. 1267, 1286 (D. Kan. 1976); *Hoffman v. United Telecommunications, Inc.*, 575 F. Supp. 1463, 1478 (D. Kan. 1983). The district court concluded there was no evidence that an alter ego relationship that created an injustice existed between FGE and CSXT and granted summary judgment to CSXT.

Doughty appeals, asserting that summary judgment was not appropriate because genuine issues remain, the court made findings of fact that were controverted, and the court disregarded 133 material facts which support his claim that CSXT is the alter ego of FGE. CSXT responds that the district court correctly granted summary judgment.

### Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 60-256(c). If reasonable minds could differ as to the conclusions drawn from the facts, summary judgment must be denied. *Finstad v. Washburn University*, 252 Kan. 465, 468, 845 P.2d 685 (1992); *Bank of Alton v. Tanaka*, 247 Kan. 443, 446, 799 P.2d 1029 (1990).

When a summary judgment is challenged on appeal, this court must read the record in the light most favorable to the party defending against the motion. *Patterson v. Brouhard*, 246 Kan. 700, 702, 792 P.2d 983 (1990). The burden of proving the lack of any genuine issue of material fact is on the moving party. *Early Detection Center, Inc. v. Wilson*, 248 Kan. 869, 871, 811 P.2d 860 (1991). To defeat a properly supported motion for summary judgment, the nonmoving party must come forward with specific facts showing a genuine issue for trial. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992). Controverted facts which are immaterial to the case will not preclude summary judgment. *Early Detection Center*, 248 Kan. at 871.

### Parent/Subsidiary Alter Ego Law

For Doughty to obtain FELA benefits, he must prove that CSXT, a railroad, is the alter ego of FGE and that an injustice or inequity exists. If CSXT is the alter ego of FGE, Doughty was working for a railroad and entitled to FELA benefits.

This court recently addressed the application of the alter ego concept in a parent-subsidiary context in *Dean Operations, Inc. v.*

*One Seventy Assocs.*, 257 Kan. 676, 896 P.2d 1012 (1995). The *Dean* court observed that in the absence of fraud or other invidious and vitiating circumstances, the fact that one corporation is instrumental in the formation of another corporation and owns nearly all of the stock of the latter corporation does not have the legal effect of making the parent corporation liable for the debts of the subsidiary corporation. 257 Kan. at 680.

The *Dean* court noted that the fiction of separate corporate identities of two corporations will not be extended to permit one of the corporations to evade its just obligations; to promote fraud, illegality, or injustice; or to defend crime. Under circumstances where the separate corporate entity is disregarded, the parent corporation may be held liable for the acts of the subsidiary. The mere fact, however, that a subsidiary corporation was organized for the avowed purpose of avoiding liability on the part of the holding company does not in itself constitute fraud justifying disregard of the corporate entity of the subsidiary. The courts will disregard the fiction of a separate legal entity when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal. 257 Kan. at 681.

The *Dean* court observed that one case which illustrated the application of alter ego analysis in a parent-subsidiary corporation context was *Vanguard Products Corp. v. American States Ins. Co.*, 19 Kan. App. 2d 63, 863 P.2d 991 (1993). In determining whether a supplier of materials to a second-tier or sub-subcontractor corporation had a right to recover under a public works bond, the *Vanguard* court held that the subcontractor corporation and the second-tier subcontractor corporation were in substance a single entity. The *Vanguard* court noted that appellate courts in Kansas and elsewhere exhibit a willingness to look beyond the mere surface features of a business relationship where required in the interests of justice and equity. 19 Kan. App. 2d at 67.

The *Vanguard* court then reviewed two federal cases which had similar issues to this case, *Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358 (10th Cir. 1974), and *Schmid v. Roehm GmbH*, 544 F. Supp. 272, and which had discussed the application of Kansas alter

ego law. In *Quarles*, the Tenth Circuit Court of Appeals examined an attempt to subject a nonresident parent corporation to jurisdiction through application of the alter ego doctrine where only the subsidiary corporation had transacted business within Kansas. 504 F.2d at 1362-64. The court noted that a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity. It asserted that circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and an injustice would occur to third parties if the separate entity were recognized. 504 F.2d at 1362. The *Quarles* court found that the totality of the facts supported the trial court's conclusion that the participation of the parent in the affairs of the subsidiary did not amount to a domination of the day-to-day business decisions of the subsidiary and held that under the facts jurisdiction could not be established through application of the alter ego doctrine. 504 F.2d at 1364.

*Schmid v. Roehm GmbH*, 544 F. Supp. 272, was an action to recover damages for injuries sustained as a result of defective safety devices on a gun. The federal district court considered whether the alter ego doctrine could be applied to impose liability on the parent corporation of the defendant manufacturer. The court observed that the fact that two corporations may have stockholders or officers in common, that one is the parent of the other, that the parent selects from its own directors and officers the majority of the directors of the other, or that a parent finances a subsidiary is, without more, insufficient to warrant treating the two corporations as one. It concluded that where it is apparent the relationship between the parent and its subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that the recognition of distinct entity would result in injustice to third persons, courts will look through the legal fiction of separate entities and treat them as justice requires. 544 F. Supp. at 275; see *Intern. U., United Auto., Etc. v. Cardwell Mfg. Co.*, 416 F. Supp. at 1286.

Noting that the determination of whether a subsidiary corporation is an instrumentality of the parent is a question of fact, the

*Schmid* court noted that *Cardwell* set out 10 factors as guidelines in making a determination of alter ego status. The 10 factors are whether: (1) the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) the corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise caused its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *Schmid*, 544 F. Supp. at 275. The *Schmid* court noted that the plaintiff had established only a few of the 10 factors and had failed to establish that the use of the separate corporate structure resulted in any fraud or inequitable conduct (or injustice) toward the plaintiff. 544 F. Supp. at 276-77.

Seven years after *Cardwell*, the United States District Court for the District of Kansas decided *Hoffman v. United Telecommunications, Inc.*, 575 F. Supp. 1463. *Hoffman* was an employment discrimination action against a parent corporation and 38 subsidiaries located throughout the country. In ruling on the subsidiaries' motion to dismiss for lack of jurisdiction over the parent corporation, the district court held, among other things, that the parent corporation exerted such dominion and control over its subsidiaries that they were not separate and distinct corporate entities but one and the same under alter ego analysis. The *Hoffman* court adopted the 10 factors as set out in *Cardwell*. 575 F. Supp. at 1478.

The concept that one corporation can be found to be the alter ego of another corporation is a well-established doctrine in Kansas law, but examples of its application in a parent-subsidiary corporate

context are rare. Several general principles may be gleaned, however, from prior application of the doctrine of alter ego by Kansas appellate courts in both dissimilar circumstances and somewhat similar actions brought to pierce the corporate veil and hold individual officers, directors, or stockholders individually responsible for acts knowingly and intentionally done in the name of the corporation. See, *e.g., Sampson v. Hunt*, 233 Kan. 572, 665 P.2d 743 (1983). The ultimate test for imposing alter ego status is whether, from all of the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties. In addition to the factors used to determine a corporate alter ego status, a plaintiff must show that allowing the legal fiction of a separate corporate structure would result in injustice toward the plaintiff. *Dean Operations*, 257 Kan. 676, Syl. ¶¶ 5, 6.

### CSXT-FGE Corporate Relationship

Fruit Growers Express (FGE), a Delaware corporation with its principal place of business in Alexandria, Virginia, was organized in 1920 and since that time has operated as a separate corporate entity. FGE is not a railroad but is termed a private car line company, a company which does not own any tracks or trains but rather owns and leases refrigerated rail cars. In addition to rail cars, FGE has substantial capital assets, including a shop and equipment in Jacksonville, Florida, worth more than $5 million, and a significant inventory. FGE has 28 facilities located in 15 states, only one of which is in Kansas. FGE's employees are not covered by FELA.

CSX Corporation (CSX) was established in 1980 as a holding corporation of two formerly independent railroads, Chesapeake Systems, Inc., (Chesapeake) and Seaboard Railroads, Inc. (Seaboard). When CSX was created, Chesapeake and Seaboard's combined interest in FGE exceeded 50%.

CSXT is a Virginia corporation organized as a subsidiary of CSX in 1988 with its principal place of business in Jacksonville, Florida. CSXT is a railroad and has over 100 subsidiaries, many of which

are not railroads or refrigerator car companies. For example, CSXT owns Energy Resources and Logistics, a cogeneration company, and Real Properties, Inc., a real estate company.

In 1983, CSX began to buy additional outstanding FGE shares so that FGE's earnings could be consolidated for federal tax purposes in the CSX corporate tax return. In 1986, FGE conducted a stock repurchase seeking to vest CSX and its subsidiaries with 100% of FGE's issued and outstanding shares. Also, in 1988, CSX consolidated its transportation business into a new wholly-owned subsidiary, CSXT. By 1988, CSXT owned all issued FGE shares, making FGE a wholly-owned subsidiary of CSXT, which in turn is a wholly-owned subsidiary of CSX. In 1988, FGE began paying an annual dividend of $100 per share to CSXT.

Prior to March 1988 there was no formal written agreement regarding the provision of services by CSXT for FGE. On March 10, 1988, FGE and CSXT entered into a Management Services Agreement (MSA) under which CSXT agreed to provide the following services for FGE: (a) human resources; (b) purchasing; (c) legal; (d) corporate communications; (e) real estate administration; (f) pensions; (g) costs and budgets; (h) cost and economic analysis; (i) treasury; (j) management information systems; (k) accounting; (l) internal audit; and (m) risk management.

### Findings of the District Court

In determining this case, the district court observed the law was clear that FELA, as administered, does not apply to refrigerator car companies. See *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 543, 20 L. Ed. 2d 112, 88 S. Ct. 1239 (1968). It noted that Doughty must be an employee of CSXT, which is a railroad, to maintain an action under FELA, and show that CSXT is the alter ego of FGE, which would require the court to treat the two corporations as one.

The district court set out the factors of the test for determining whether an alter ego relationship exists between the two corporations and then applied the factors to the evidence as follows:

1. Does CSXT own the capital stock of FGE?

As of 1988, CSXT became the sole shareholder of FGE. Prior to being a wholly-owned subsidiary of CSXT, FGE's majority stockholders were Chesapeake and Seaboard, which companies later became CSX. It was in 1986 that CSX began repurchasing the outstanding FGE stock. However, mere ownership of all the stock of a subsidiary will not, in and of itself, subject the parent corporation to the jurisdiction of the state where the subsidiary is doing business, nor does it require a finding that an employee of the subsidiary is an employee of the parent corporation.

2. Do the parent and subsidiary have common directors or officers?

The facts show that since January 1, 1990, there have been common directors and officers of the two corporations. Two of the three members of the FGE Board of Directors are officers or directors of CSXT. Three of the five FGE corporate officers are officers, directors, or employees of CSXT.

3. Does the parent corporation finance the subsidiary?

There are no facts that show CSXT finances FGE. The Management Services Agreement calls for certain services to be provided by CSXT, for which FGE pays an agreed fee.

4. Does the parent corporation subscribe to all the capital stock or did it otherwise cause the incorporation of the subsidiary?

FGE is a much older corporation than CSXT. Although CSXT now owns all of the stock of FGE, there are no facts to show that CSXT brought about the existence of FGE.

5. Does the subsidiary have grossly inadequate capital?

There are no facts to show that FGE has inadequate capital. In fact, the opposite appears to be FGE's state of affairs. FGE does pay an annual dividend of $100 per share to CSXT.

6. Does the parent company pay salaries, expenses, or losses of the subsidiary?

There is no evidence of FGE losses nor any facts to show that any FGE officer is paid by CSXT. There is evidence of minor expenses having been paid by CSXT for certain training of FGE employees and the providing of safety literature.

7. Does the subsidiary have substantially no business except with the parent or have no assets except those conveyed to it by the parent?

There are no facts to show that any assets have been conveyed to FGE by CSXT. The only evidence as to business shows that FGE's Kansas City, Kansas, facility does business almost exclusively with the Atchison, Topeka & Santa Fe Railroad and not with CSXT.

8. Is the subsidiary referred to by the parent as a subsidiary or as a department or division?

There are no facts to show that CSXT ever referred to FGE as anything other than a subsidiary in any of its published documents or literature.

9. Do the directors of the subsidiary act independently in the interest of the subsidiary?

Although there is a corporate agenda of the CSX family, there are no facts to show that any FGE director took any action that was adverse to the position of FGE.

10. Are the formal legal requirements of the subsidiary as a separate and independent corporation observed?

The facts all show that they are observed.

An additional question would be whether honoring the legal fiction, if one were found, would result in injustice.

The district court pointed out that FGE was not a railroad. It noted the fact that FGE's business has always been outside the requirements of FELA was evident because Doughty had previously received state workers compensation as an injured employee of FGE.

The district court found that there was no showing that CSXT, which owned all of the outstanding shares of FGE stock, exerted such dominion and control over FGE that they did not in reality constitute separate and distinct corporate entities. It observed that although both corporations were a part of the CSX corporate family, each corporation was separate and distinct. The district court concluded that there was no showing that the separate corporate structure resulted in an injustice or inequitable conduct toward the plaintiff.

The district court then stated that summary judgment was appropriate if Doughty failed to show that an alter ego relationship exists between the two corporations. See *Luckett v. Bethlehem*

*Steel Corp.*, 618 F.2d 1373, 1378-79 (10th Cir. 1980); *Schmid v. Roehm GmbH*, 544 F. Supp. 272, 277 (D. Kan. 1982); *Bradsher v. Missouri Pacific R.R.*, 679 F.2d at 1255 n.5 (8th Cir. 1982). It determined that there was no evidence to support a finding that CSXT was the alter ego of FGE. The district court concluded that Doughty was not working for a railroad at the time of his injury and granted summary judgment to CSXT.

A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. *Land Grant Ry. & T. Co. v. Coffey Co.*, 6 Kan. *245, *253 (1870). Any person, partnership, association, or corporation may incorporate to conduct or promote any lawful business or purpose. K.S.A. 17-6001(a), (b). A corporation holding stock in another corporation stands in the same relation as a stockholder. See *A. T. & S. F. Rld. Co. v. Cochran*, 43 Kan. 225, 234, 23 Pac. 151 (1890).

Both parties agree that FGE is a wholly owned subsidiary of CSXT; FGE is not undercapitalized; and CSXT does not pay the salaries, expenses, or losses of FGE. The parties disagree over whether FGE and CSXT have common directors and officers; CSXT finances FGE; the bulk of FGE's business is performed for CSXT; FGE is a de facto division of CSXT; the directors and executives of FGE act independently in the interest of the subsidiary or take direction from the parent corporation; the formal legal requirements of FGE as a separate and independent corporation are observed; and CSXT generally directs and controls the day-to-day operations of FGE.

The determination of whether a subsidiary corporation is an instrumentality of the parent is a question for the trier of fact. Controverted facts which are immaterial to the case will not preclude summary judgment. We have reviewed the district court's 67 findings of fact and the 133 material facts which Doughty claims support his claim that CSXT was the alter ego of FGE and then applied the factors used by the district court to determine if the district court's grant of summary judgment was correct.

We note that no single factor or combination of factors is necessarily conclusive in determining whether to apply the alter ego doctrine. See *Dean*, 257 Kan. at 683. The fact that two corporations

may have stockholders or officers in common, that one is the parent of the other, that the parent selects from its own directors and officers the majority of the directors of the other, and that a parent finances a subsidiary is, without more, insufficient to warrant treating the two corporations as one. To treat FGE and CSXT as one corporation we must be able to conclude from the facts and circumstances that the relationship between CSXT and FGE is so intimate, CSXT's control over its subsidiary, FGE, is so dominating, and the business and assets of the two are so mingled that the recognition of FGE as a distinct entity would be a legal fiction that results in an injustice to Doughty.

To defeat CSXT's properly supported motion for summary judgment, Doughty was required to provide specific facts showing a genuine issue for trial. After review of the record, we find that the district court's grant of summary judgment in favor of CSXT was correct.

Affirmed.

SIX, J., not participating.

ROBERT H. MILLER, C.J. Retired, assigned.