Janos DOMINICS, Jr.

v.

## ILLINOIS CENTRAL RAILROAD COMPANY.

Civil No. 3:95CV498LN.

United States District Court, S.D. Mississippi, Jackson Division.

June 17, 1996.

---

**224**

Jeff D. Rawlings, Rimmer, Rawlings, Macinnis & Hedglin, P.A., Jackson, MS, Van Kirk McCombs, II, Burge & Wettermark, Birmingham, AL, for Plaintiff.

Thomas Y. Page, Upshaw, Williams, Biggers, Pag, Kruger, Jackson, MS, Charles T. Ozier, Wise, Carter, Child & Carawa, Jackson, MS, for Defendant.

## MEMORANDUM OPINION
## AND ORDER ·

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Illinois Central Railroad Company (ICRC) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Janos Dominics, Jr. has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defen- dant's motion is well taken and should be granted.

■ Plaintiff filed this suit against ICRC alleging entitlement to benefits under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, claiming that he sustained a disabling back injury on August 1, 1992 while an employee of ICRC. By the present motion, ICRC submits that contrary to his allegations, plaintiff was *not* an employee of ICRC within the meaning of the FELA at the time of his injury and therefore, it is entitled to summary judgment.

At the time he was injured, plaintiff was a mechanic employed by Pandrol Jackson, a New York–based railroad track grinding company with which ICRC had contracted to perform track grinding services on ICRC's Mississippi rails. Plaintiff was removing a grinding motor for repair when he sustained the injury that he claims is compensable under the FELA. The FELA renders a covered railroad such as ICRC liable for negligently causing the injury or death of any person "while he is employed" by the railroad. The sole question on the present motion is whether plaintiff was employed by ICRC when his injury occurred. In the court's opinion, the facts relevant to this issue are undisputed, or put another way, plaintiff has not submitted sufficient proof to create a genuine issue of material fact so as to warrant a trial on the issue. Summary judgment will thus be entered for ICRC.

This service performed by Pandrol Jackson, which is a separate and distinct entity from ICRC, consists of Pandrol Jackson's crew going over a railroad's tracks with a specialized train and using a system of grinding rocks and motors to grind the rail into a shape that better conforms to the wheels of a railroad car. This is a maintenance procedure which Pandrol Jackson performs for various railroad companies throughout the country and which is intended to prolong the life of the tracks. According to the parties' evidence, the typical complement of trains used by Pandrol Jackson in the performance of its work includes a locomotive, a camp car, two water cars and four grinding cars, though this may vary depending on the location and specific job. And, its crew usually

includes a supervisor and assistant supervisor, an employee who operates the locomotive, grinding motor operators that regulate the grinding motors while in operation, and mechanics, such as the plaintiff, who maintain and repair Pandrol Jackson's equipment.

The contract between ICRC and Pandrol Jackson required that Pandrol Jackson furnish its own personnel for the work, including its supervisory personnel, and provided that all personnel which Pandrol Jackson furnished remained employees solely of Pandrol Jackson, subject to its exclusive supervision and control. Pandrol Jackson paid its own employees, and furnished them transportation to its job sites, including the ICRC site where plaintiff's injury occurred, as well as room and board at times. Further, Pandrol Jackson retained the exclusive right to hire and fire its employees. Additionally, Pandrol Jackson supplied its own equipment, materials and supplies necessary to perform its contractual obligations; other than diesel fuel and water provided by ICRC, the Pandrol Jackson crew was self-sufficient with regard to the work they performed.

The seminal case construing the "while employed" clause of the FELA is *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974). The Court in *Kelley* first noted that FELA's "while employed" language requires a finding not just of an agency relationship, but of a master-servant relationship between the rail carrier and the FELA plaintiff, *id.* at 323, 95 S.Ct. at 475–76 ("From the beginning the standard has been proof of a master-servant relationship between the plaintiff and the defendant railroad."). Then, after observing that "for purposes of the FELA the question of employment, or master-servant status, was to be determined by reference to common-law principles," even when "analyzing the relationship between two employers and a worker," the Court explained:

> Under common-law principles, there are basically three methods by which a plaintiff can establish his "employment" with a rail carrier for FELA purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. *See Restatement (Second) of Agency* § 227; *Linstead v. Chesapeake & Ohio R. Co.*, 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453 (1928). Second, he could be deemed to be acting for two masters simultaneously. *See Restatement* § 226; *Williams v. Pennsylvania R. Co.*, 203, 209 (CA2 1963). Finally, he could be a subservant of a company that was in turn a servant of the railroad.

*Id.* at 324, 95 S.Ct. at 476. In the case *sub judice*, the plaintiff acknowledges, as did the plaintiff in *Kelley*, that he was technically employed by Pandrol Jackson when he was injured; but he maintains that his work was sufficiently within the control of ICRC to bring him within the coverage of the FELA. He does not suggest that his status as a railroad employee can be established by either of the first two methods identified in *Kelley*, and instead, acknowledges that the "sole" basis upon which he predicates his claim for FELA recovery is his theory that "at the time of the accident, plaintiff was engaged in an operational activity of the railroad and he was a subservant of an *agent* of the defendant railroad" (emphasis added).

■ In his effort to bring himself within this third method recognized by *Kelley* for establishing employment status, plaintiff repeatedly refers to "traditional concepts of agency," which he argues serve to "extend the coverage of the FELA." But even were the court to conclude that plaintiff has shown that, or at least created a question of fact on the issue of whether Pandrol Jackson was an *agent* of ICRC, that still would not provide a foundation to support a conclusion that plaintiff was effectively ICRC's employee, for in accordance with *Kelley*, plaintiff, who was obviously an employee or servant of Pandrol, may only be considered an employee of ICRC if Pandrol Jackson was a *servant* of ICRC. Indeed, the very point sought to be made by the Court in *Kelley* is that the existence of merely an agency relationship between the plaintiff's direct employer and the railroad will not suffice to create an employment relationship between the plain-

tiff and the railroad under FELA.[1] In fact, in *Kelley,* the district court had found that the plaintiff was an employee of the railroad because his employer was the railroad's agent. But the Supreme Court determined that this was an erroneous standard, since proof of a master-servant relationship was required. Thus, even though the district court was "plainly correct in concluding that PMT was an agent of the railroad[,] ... a finding of agency is not tantamount to a finding of a master-servant relationship." *Id.* at 325, 95 S.Ct. at 477. And since the district court had not considered whether the facts demonstrated the existence of a master-servant relationship, the Court concluded that the case was required to be remanded for further findings in accordance with the proper legal standard.

It is clear, therefore, that to prove FELA employment under the subservant theory, plaintiff must establish that Pandrol Jackson was the servant of ICRC. Or more precisely, to withstand defendant's summary judgment motion, he must present evidence to create a genuine issue of fact on the question of whether Pandrol Jackson was ICRC's servant. This he has failed to do.

■ A servant, as defined by the *Restatement (Second) of Agency,* § 220(1), and recognized by the Court in *Kelley,* is "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." The Fifth Circuit has expounded on this requirement of control in the FELA context, stating:

The test of employment is the established test in workers' compensation cases. It is whether the railroad has control of the employee or the right to control the employee. The law does not require that the railroad have full supervisory control. It requires only that the railroad, through its employees, plays "a significant supervisory role" as to the work of the injured employee."

*Lindsey v. Louisville & Nashville R. Co.,* 775 F.2d 1322, 1324 (5th Cir.1985) (citing *Kelley,* 419 U.S. at 327, 95 S.Ct. at 477). The plaintiff, consistent with the control requirement, does state in his brief that "the railroad had the right to control Pandrol Jackson's employees [so] that Pandrol Jackson was acting as a servant of the railroad when performing grinding operations." Yet he has offered no proof of such control. Defendant, on the other hand, has presented evidence negating plaintiff's unsubstantiated allegation of control. More specifically, Larry Anderson, an engineering superintendent for ICRC who is responsible for the management and maintenance of ICRC's rails located in Mississippi, has explained in an affidavit submitted by defendant that ICRC does not possess the knowledge or experience about rail grinding activities to enable it to supervise, direct or control the manner in which Pandrol Jackson's employees perform their jobs[2] and that ICRC does not exercise such supervision or control over Pandrol Jackson and/or its employees. Rather, Pandrol Jackson has the exclusive right to supervise, direct and control its employees in Mississippi. In fact, as is further established by Anderson's unrefuted affidavit, the only contact which ICRC has with Pandrol Jackson crews is its provision of a pilot for their train to ensure the safety of their crew and ICRC's trains, along with a rail supervisor to follow behind the grinding train to make sure any sparks caused by the

1. In support of his agency argument, plaintiff cites a number of pre–*Kelley* cases, including primarily *Smith v. Norfolk and Western R. Co.,* 407 F.2d 501, 502 (4th Cir.), *cert. denied,* 395 U.S. 979, 89 S.Ct. 2134, 23 L.Ed.2d 767 (1969), where a finding of FELA employment was sustained on the basis that the injured worker was employed by an agent of the railroad. However, those cases were implicitly overruled by *Kelley,* in which the Court specifically observed that it had granted certiorari to resolve the conflict in the circuit courts exemplified by the Ninth Circuit's decision in *Kelley,* which required proof of a master-servant relationship, and the Fourth Circuit's decision in *Smith,* which found an agency relationship sufficient. The Court rejected the *Smith,* standard in favor of that espoused by the Ninth Circuit. Thus, plaintiff's reliance on these cases, and *Smith* in particular, is obviously misplaced.

2. In fact, ICRC had contracted with another company, Advance Rail Management, to follow behind Pandrol Jackson's crew and inspect the grinding work that was being performed.

grinding operation do not set anything on fire.[3] This, however, is not indicative of control or supervision by ICRC, but rather is merely the kind of cooperation necessary to allow Pandrol Jackson to perform its contract with ICRC. *See Kelley,* 419 U.S. at 329, 95 S.Ct. at 478–79 (quoting *Standard Oil Co. v. Anderson,* 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909) and citing *Shenker v. Baltimore & Ohio R. Co.,* 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963)) (noting importance of distinguishing between " 'authoritative direction and control' " by railroad and the "minimum cooperation necessary to carry out a coordinated undertaking" which does not amount to control or supervision).

In the court's opinion, plaintiff has failed to come forward with evidence to establish a genuine issue of his employment status. Accordingly, the court concludes that ICRC's motion for summary judgment should be granted.

It is, therefore, ordered that defendant ICRC's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**3.** Plaintiff suggests that Pandrol Jackson performed as ICRC's servant because Pandrol Jackson's crews did not "make a move" unless told to do so by the railroad. This is an apparent reference to the fact that ICRC provides a pilot for the Pandrol Jackson train to let Pandrol Jackson know what areas of the track are safe to navigate without encountering ICRC trains.